DECISION
This matter is before the Court for decision on Plaintiff, June Reynolds MacKaye's, appeal of a Newport Probate Court's Order entered on February 16, 2006 in the administration of the estate of Plaintiff's late husband, Donald Bailey MacKaye.
In her complaint to this Court Plaintiff/Appellant specifically challenges the probate judge's Order decreeing Defendant bank to sell real property, within the subject estate, located at 673 Bellevue Avenue in Newport. Plaintiff asserts that the Order should be reversed and/or vacated for the following reasons:
 a. The Order was entered without benefit of an evidentiary hearing;
 b. The Order was entered without any findings of fact or reasons set forth on the record for said Order;
 c. The Order failed to take into consideration alternatives less drastic than ordering the listing and sale of the appellant's home;
 d. The Order failed to give any consideration to your claimant's statutory right to continue to reside in her residence, being her right to a life estate in said premises, by virtue of the provisions of Section 33-24-2, RIGL;
 e. The Order was entered after your appellant's attorney had been excused from attendance at the Newport Probate Court session, and the appellant was not present or represented at said court session; *Page 2 
 f. The Order fails to consider that Wachovia Bank has failed to register as a foreign corporation and has failed to procure a certificate of authority to transact business in Rhode Island, in violation of the provisions of Section 7-1.2-1401 RIGL.
(Pl.'s Compl. at ¶ 3 (a) — (f).)
Defendant/Appellee bank countered that due to Plaintiff's failure to comply with the statute governing probate appeals, this Court should affirm the Order of the Probate Court and dismiss the appeal as untimely.
Following a February 10, 2006 hearing in Probate Court the presiding judge entered an Order (on February 16, 2006) authorizing the listing of the real estate as of March 1, 2006. On February 20, 2006 the Plaintiff filed an appeal of the Order authorizing the marketing of the property. On March 17, 2006, Plaintiff filed an appeal in this Court along with a request to extend time in which to provide the probate court record. Thereafter, on March 23, 2006, the Plaintiff, by letter, informed the probate clerk of the extension request and expressed the need for a "transcript" of the hearing which culminated in the February 16th Order which Plaintiff opposes.
The Defendant bank had asserted as fatal to Plaintiff's appeal her non-compliance with the statutory mandates of R.I.G.L. 1956 § 33-23-1et seq. Specifically, the Defendant moves that Plaintiff failed to file a certified record of the Probate Court proceedings within the 30 day period as required by § 33-23-1(a)(2). (No certified record was filed in this Court until April 25, 2006.) The Defendant further cited as non-compliant and untimely, the Plaintiff's filing of the requisite affidavit, per § 33-23-1(a)(3), 38 days after the entry of the challenged Order.
Plaintiff had alternatively argued that if this Court should declare that the statutory deadlines were not adhered to, that such non-compliance should be excused pursuant to the provisions of R.I.G.L. 1956 § 9-1-6. *Page 3 
After the appeal and ensuing motions were filed the parties to this litigation and the Court met on repeated occasions to discuss and effectuate a sale of the property to Jeff Budge and Christienne MacKaye Budge ("the Budges"). The Budges had made a claim — in Probate Court — for reimbursement of substantial personal funds expended in the care and maintenance of the property which they reference as "Quatrel." On December 29, 2005 the Budges prepared and executed a proposal to purchase Quatrel "as is" for $1,100,000.00.
Despite the sustained efforts of the parties to effectuate a closing, the sale never materialized. An order was entered whereby this Court would proceed to decision "based on the record as it exists" unless a consent judgment was entered by the parties in November, 2007. As no such judgment was forthcoming this Court will inspect (de novo) the record provided and determine the validity of the contested Order in accordance with the provisions of § 33-23-1(d). In pertinent part the latter instructs that: "The findings of fact and/or decisions of the probate court may be given as much weight and deference as the superior court deems appropriate, however, the superior court shall not be bound by any such findings or decisions." None of the parties have requested an amplification of the record or a testimonial proceeding in this Court.
The Probate Court proceedings were not stenographically recorded; thus, there is no transcript of any witnesses' or attorneys' remarks. The certified record is comprised entirely of documents including the following, in order of appearance in the file: Plaintiff's claim of appeal received by the Probate Court on February 23, 2006; an "Affidavit and Certification of Claim of Appeal" received by the Probate Court on March 24, 2006; a copy of the "Complaint on Probate Court Appeal" filed with this Court and received by the Probate Court on March 24, 2006; an order of the Probate Court, entered on February 16, 2006, extending the listing date *Page 4 
for the real estate to March 1, 2006; Plaintiff's "Objection to Proposed Order" received by the Probate Court on February 23, 2006; a letter dated February 8, 2006 and received by the Probate Court on February 9, 2006, authored by attorney Bardorf and requesting a continuance of the February 10th hearing date; a "Motion For Continuance" filed by attorney D'Addario and received by the Probate Court on February 9, 2006; Wachovia Bank's "Petition for the Sale or Mortgage of Real Estate" received by the Probate Court on October 26, 2005; a January 10, 2006 letter from attorney J. Robert Thompson of Lilburn, Georgia regarding June MacKaye's proposal for purchase of the "Quatrel" (no date file stamp of Probate Court evident); a December 29, 2005 letter from the Budges to Vicki Long of Wachovia Bank with attached "Real Estate Contract Offer"; a handwritten letter dated December 29th (year absent) from June MacKaye to Vicki Long; an order dated November 18, 2004 appointing attorney Stephen A. Haire as temporary custodian of the estate; an "Application for Approval of Fiduciary's and Attorney's Fees" dated October 14, 2005; the "Temporary Custodian's First Final Account" filed October 14, 2005; a "Petition for Instructions" dated January 21, 2005; a "Report of Damage and Repair" for Kirby Perkins Construction regarding the subject premises and dated July 2, 2003; an "Affidavit of Jeff Budge" (with itemized schedule of precise dollar amounts) regarding expenditures for maintenance of the property received by the Probate Court on September 23, 2005; a "Statement of Matters Pending Before this Court" signed by Judge Sullivan; an "Assignment for Formal Hearing" signed by Judge Sullivan and docketing the matter for February 18, 2005 and eight pages of Judge Sullivan's handwritten notes (copied from a legal pad).
The notes of Judge Sullivan demonstrably establish that his decision to order the sale of the real estate was anything but precipitous. He articulated and categorized all of the pertinent *Page 5 
provisions of the will, expressing his thoughts as follows:
 2. I understand that the only asset is the [real estate] in [Newport] and under the provisions of the [will] she is[:]
 a) to receive the income and
 b) may encroach on principal for support and her medical expenses . . .
 3. There appears to be no other assets or income to be [applied?] to the [real estate], such as [real estate] taxes, general expenses, maintenance . . .
 [4](a) Mr. Haire indicates that [real estate] is in danger of deterioration without repairs . . .
 (b) Further, the Budges have submitted an offer to purchase or $1 mill conditional on a purchase meeting of $1[.1?] mill.
(See Longhand notes of Sullivan, J. ¶¶ 2, 3, 4(a), 4(b).)
Furthermore, Judge Sullivan was well aware of attorney Bardorf's objection to the sale of the real estate and the grounds therefore. The Judge's hand printed notes in this regard state:
Brian Bardorf:
 No factual [evidence] or testimony presented to [Court]. . . .
 No showing that sale is necessary:
Most compellingly, the final paragraph of Judge Sullivan's longhand notes reveals that his decision to order the sale was the product of reflection and thoughtful consideration. His words provide this Court with clear insight into the rationale for a decision he made in the best interest of the estate. The Judge wrote in his own hand:
 6. In giving the matter further thought, the [Court] is led to the conclusion that the only approach is to sell the house:
 a) From the proceeds, Mrs. MacKaye can insist that the language and clauses of the will as they apply to her, be *Page 6 
carried out with dispatch . . .
 b) Also, the [Court] believes that in today's [real estate] market the property would sell for substantially more than the offer of $1 million submitted by Mrs. McKay [sic].
The aforementioned references to Judge Sullivan's statements and rumination comprise only a portion of his extensive notes. This Court, based on its review of the entire record, is convinced that Judge Sullivan's Order to sell the real estate was based on his comprehensive and intelligent review of all the operative facts in the estate picture.
Therefore, this Court, without reservation, upholds and endorses Judge Sullivan's findings. The February 16, 2006 Order in controversy is hereby affirmed and Plaintiff's appeal is dismissed.